which is 20-3749 Solerno against Glenn Springs Holdings. We're on a tight schedule today, so anything that council can do to abbreviate arguments would be appreciated, but you've got the time allotted to you. Thank you very much. All right, let's hear from council for Solerno. Good morning, and may it please the court. Your honors, I represent the appellants. In our briefs, we have addressed the two grounds on which the lower court dismissed the First Amendment complaint, circle of preemption and plausibility. And I will highlight some of our arguments here. However, before I go into them, I just want to give you an idea of what this case is about, and more importantly, what it is not about. This case is about people, our clients and the proposed class representatives who are current or former residents near the infamous Love Canal site, where hooker chemicals dumped thousands of tons of toxic waste in the 1940s and 50s. These people were not among the original residents who had to be evacuated. They are not the plaintiffs who sued accidentally in the original Love Canal litigation. Those original plaintiffs sued under state tort claims, and among other relief, they got a settlement in 1983, which provided for the establishment of the Love Canal Medical Fund that offers medical monitoring and assistance with medical expenses due to toxic exposure. Our clients are people who came to the area later or were there at the time, but lived outside the perimeter of the evacuated areas. They have also been exposed to the Love Canal chemicals and are also either sick already, or have family members who have passed away, or are currently healthy, but will always be at an elevated risk of getting sick. They also have property damages. Their properties are actually contaminated with Love Canal chemicals, and we have testing results to show that. These people too are seeking compensation for their damages, and they too want to be made whole, just like the other residents. That's what this case is about. But counsel, what are we to make of the fact that DEC and EPA have said the remediation is perfect and complete? They did that in 2014 and 2019. How can that exist with your claims? How can your claims exist? Your honors, our claims, we are not challenging the remedy or the design of the remedy or anything like that. The DEC never said the remediation is perfect. There is a stop phrase in every report that says that if you do everything perfectly according to the remedy, then eventually you'll clean up and it will be protective of public health. However, the remedy is ongoing, and our complaint has to do with the harm that has already been done to these plaintiffs. The exposure that they have already- Let me just see if I can put your allegations in two categories. You have one category that's essentially that the remediation that was done historically was inadequate or insufficient, and that the contaminants therefore leaked onto your client's property. That, I think, is allegation bucket number one. Bucket number two relates to what happened on Colvin Boulevard in 2011. Am I actually summarizing sort of what your theories are? Yes, and the fact that there is actual evidence of contamination, of Love Canal- And then just going back to Judge Pooler's question, with respect to the ineffective remediation, I mean, that's like classic conflict preemption. The EPA said what remediation had to be done at the time, and to the extent you're arguing that they should have done more to prevent additional contamination that you allege occurred, that's classic conflict preemption, right? You're saying they should have done more at the time and or to clean up your client's property, but the EPA didn't require that. Exactly, but the remedy, none of the remedies ever required testing of our client's properties. I know, but the law is you can't- Remediating our client's property or- Ms. Factor, the law is you can't ask for more than what the EPA required the defendants to do. And that's exactly, I think, what you're alleging. They should have done more. The law is, if the EPA is involved and they set up a remedy and record of decisions, then the defendants then don't have to do more. We are not asking for the remedy to be revised or for any additional action. What we're asking is for relief for the harm already done, which is a tort claim, which in many similar situations- I understand you're seeking monetary damages, but the basis for the monetary damage is that more should have been done. And that's where the problem is, right? The basis for the monetary damages is that the chemicals that the defendants dumped or didn't clean up have caused personal injury and property damage. Whichever way they did it, that has been the effect. And other residents have been compensated for their illnesses. They have a medical monitoring fund. These, their neighbors are no worse. They should also have the opportunity to get the same care and compensation because the chemicals are there. So there's, and what we're trying to say about the conflict is, it's not like all those cases where there's a state actor in conflict with a federal law or a federal objective. There's no conflict between doing the cleanup. The defendants can continue doing the cleanup and compensate our clients. There's no conflict between that. That was never a type of relief that was ordered by any agency. And there's no conflict- No, you're relying on the council? You're relying on the savings clause that says under CERCLA that state remedies continue to exist? Yes, Your Honor. We are relying both on the savings clauses and on the numerous cases which we have cited, which said that tort claims can continue to proceed and people affected by hazardous waste sites can get compensation under state tort law for their damages. Would you agree that if the EPA supervises whatever remedy or action is being taken and concludes that it's properly performed, that that would create conflict preemption? I would say that the EPA's remedy and the cleanup has to do with the cleanup of the site. Neither the remedy nor anything that was done focused on the impact on the residents. If there's a case from the fourth circuit called Caballo that says if the EPA supervises the activity and concludes that it's properly performed, that that creates preemption. Isn't that an accurate statement of the law? Yes, if we were asking to change the remedy, if we were asking to do something else, like in the Bartlett case, like the plaintiff's absence bargain, that would be preemptive. On Calvin Boulevard, when they found the problem, when they were doing the sewer work, they notified the EPA, they had a meeting, the EPA attended, they submitted a plan to the EPA, the EPA approved the plan. And then after they did the work, the EPA did testing and they said their data concludes that there was no problem caused by the sewer treatment, that there was not any type of leakage of contaminants or problem with the remedy. So it was complete supervision of that by the EPA. What we're saying is that that's an even, the situation with the Calvin Boulevard sewer is an even more egregious example of the fact that the remedy was not all inclusive. Even they say that, okay, this was never part of the original cleanup. There are areas, there are pockets in the sewer that were never cleaned up. So this was one of them that they happened to excavate and find out. And so that was outside the remedy, according to the conclusions, if you believe the conclusions in the report. And similarly, outside the remedy is any kind of relief for the people, the people who live in the area. That was never, never done, but they have been compensated through tort law in the prior Love Canal litigation. And also- Well, finish your sentence. I have a question. Both in the prior Love Canal litigation and in the pending related cases that are pending in district court, these exact or very similar tort claims are going forward. There are four defendants named in this action. From whom are you seeking a remedy? We are seeking remedy from all of the defendants, both the municipal defendants and the private. All right. But don't they get protection once they participate in the circle of cleanup? Aren't they told that they won't be sued anymore? If it was part of the remedy, they would get protection. Our entire claim and the basis for our claims are outside of the remedy. These are tort claims based on the damages already caused to our clients. Well, it's not a situation where we are trying to do additional cleanup and saying that they should pay for that cleanup, not under circular, but under state law. That's not the situation. What we're saying is that we are getting sick. People are dying. People's homes have Love Canal contamination. That's never been addressed and it should be. And to whom do we direct that to, that it's never been addressed? Do we direct it to EPA, DEC, as well as the individual defendants here? CERCLA is not... The CERCLA statute is basically geared towards cleaning up contaminated property. It is not geared toward addressing personal injury claims such as these or property damage claims. So we don't address it to the agencies. We address it to the defendants who are the responsible parties for this contamination. Great. Let me ask you about the role of the president's approval. Is it not the case that the president is required to approve the remediation that you allege the defendants have failed to conduct? We know that there was supervision by the federal agency over the remediation. We are not saying that there was no remediation done. We are saying that despite whatever remediation that was done, harm has been caused and these people deserve to be made whole for the harm that has been caused. Well, I mean, is there a role here for the president to approve the remediation? To approve something? Well, yes, the government agency, the EPA in this case and the DEC has had oversight authority over the cleanup of the site. But like I said, none of that involved helping the people who live there. Okay, thank you. We'll hear from the first of a series of other counsel. I guess it's counsel for Glenn Springs Holdings who is the principal advocate on the other side. Thank you, Judge. Kevin Hogan from Phillips Lytle for the Occidental Defendants. All the defendants joined in the primary motion to dismiss and I'll be presenting that argument but certain of the other defendants moved individually and also will seek to address the court today. Maybe I could start by following up on some of the questions that the court was just posing to Ms. Factor and I'll start with the last one. Is there a role for EPA? Absolutely there is. One thing that the plaintiffs and their attorneys have not done is gone to the agencies with these claims and tried to urge upon them that the landfill has been negligently implemented or is failing on a continuous basis to the present day. These are all words found in the complaint to describe the allegations that target the remedy notwithstanding efforts by the plaintiffs now to distance themselves from that. Now, the EPA and the remedy, Ms. Factor tried to argue that that only applies to the site and not to the neighbors. Well, this was addressed in the Atlantic Richfield v. Christian case. It also was addressed in the Bartlett case. This is the classic remedy didn't go far enough. In Atlantic Richfield v. Christian, the court noted that look, if the allegations are that beyond the geographic limits of the remedy, contamination reached other residences by virtue of those allegations that renders those additional properties part of the circle facility and any action to remediate just the sort of remedy that these residents are seeking here necessarily falls under the scope of CERCLA and necessarily under section 122E6 requires EPA approval which is why the state tort claims. And in that case, it was a restoration damage claim. Here, paragraph 10 of the complaint, they seek injunctive relief to clean up the properties. It can only, it's preempted by 122E6 and they are required to go to EPA and DEC. That's the rule. Yes. The two types of personal injury tort claims I think that would not be preempted would be first people who suffered the injury before the remediation. They obviously would have the ability to sue. The fact that the remediation when done wouldn't prevent them from recovering. That would be group one. And that in fact happened here, right? I agree with that. You get to the second one, but that's absolutely right, judge. And just to follow up and clarify that that was gonna be the final of the three follow-ups. The plaintiffs here are not like the prior plaintiffs in Love Canal. They cannot and don't allege pre-remedy exposure, just what you were getting at. They moved here in 1994 and 2002, 15 and 22 years after the remedy was begun. Right. But the second category, it would be what's called the negligent implementation of the remedy. And you said they could go to the EPA with something like that, but I think the law is they don't have to. If there in fact was negligent implementation of a remedy that was not supervised by EPA, they could bring a personal injury claim based upon that without preempting any, without there being any preemption problem, right? Yeah, I'm going to agree, but only after we clarify it. I think you used the words that were not approved by EPA. I'm gonna parse this down to two examples where negligent implementation might lead to claims that are not preempted, state tort claims. And the first is where the conduct is not approved by the governing agency. When that does not occur, when there is that, when that approval is not there, the Bartlett decision provides a nice roadmap to how to analyze that. It doesn't merge into the consent decree. It doesn't merge into the remedy itself. And therefore the conduct that they're complaining of isn't afforded that preemptive force. Here, that's not the allegation, right? Because we know given how much they relied on in quoting or substantially restating 28 paragraphs from the five-year review reports that Judge Pooler cited to, we know that that document's integral and EPA has approved of that implementation. EPA found that there was no negligent implementation. The second type of negligent implementation that might not be preempted is one that isn't present here. And that's where the conduct, the negligent conduct may have directly caused an injury, but not the conduct was negligent in creating a remedy and the remedy is faulty. And it's the faulty remedy that's leading to leaking, that's leading to migration, that's leading to ongoing and continuous exposures. Well, they do a wedge here. They do a wedge here that there was this high pressure jetting device that was cleaning the sewers that caused damage. So there is that type of allegation. That's fair enough. It may be one or one of two specific instances of conduct contained in the entire complaint with respect to all 12 of the defendants. However, the same report that Judge Pooler cited was referring to earlier, contains a lengthy discussion about that work. And EPA found that the work they did was effective, did not result in any sort of further migration. Consequently, I think under this court's rules, the allegation is not entitled to the presumption of truth when it's contradicted by an integral document here, the EPA report. Can I ask you about the Avril Bradley case? I know it was a different posture, but it does appear to me at least that the allegations in that case are very similar to the ones here. And that one is going forward, right? That's true. That case, while it may be similar, we just, I would say, probably has not yet had the opportunity to bring these issues, particularly the preemption issues to the court yet. But- Did the preemption issues come up in the context of the remand motion in that case? But it's a completely different one. And you're right. I should have been more specific. Conflict preemption is not an issue that has been raised. It's not an issue that's been considered. And it's not an issue that's been decided. It was only field preemption, which goes to whether federal jurisdiction exists or not. So my question about the reports of 14 and 19 was how could they have said everything is fine when they, after they discovered this toxic leak at the Colvin sewer? How could they have said everything was fine? And isn't the report subject to some cynicism on the part of this court? Well, if you read it, it answers your question. You know, the first question about, you know, how could they find that? They didn't find that it was a leak. In fact, they ruled out entirely any question that it was leaking. And they go further in the conclusion to say exactly the opposite. They say that overall the remediation system is functioning as designed. They go on to say the remedial systems are effective, operating as designed, and was not the source of the contamination found in the section of the pipe. It was instead an isolated instance in a 20 foot deep excavation that had been passed over during the original remediation and which the EPA found in that same report that you referred to had not migrated away from that location during all those years. But the plaintiffs now are claiming that it has migrated and that the cleanup harmed them even more and that they are damaged. So how do we deal with that? Well, isn't the problem, Judge, that they don't offer anything else other to support that conclusory theory than the discovery of the contamination in that sewer excavation? EPA is the expert agency charged with these matters. And not just general, but also at this site. That's why I don't think this court needs to or should be skeptical or cynical in interpreting the clear and unequivocal conclusion that the agency reached. But the agent, what the agency reached differs from what the plaintiffs claim they suffered. They don't take account of the plaintiff's damages. And when that happens, the court's rules, under Iqbal and Twombly and the rules governing plausibility, the court looks to whether the plaintiffs have provided supporting factual allegations that will make their claim plausible. And here, we, in our brief, go through the relatively sparse allegations of fact that they provide. When it comes to the conduct, for instance, it becomes a tautology. They say that, you know, upon information of belief, accidentally engaged in the following misconduct. What is that? This is paragraph 95. They have a number of subparts. What is that misconduct? Intentional negligent, careless, reckless, and otherwise tortious conduct in connection with the initial remediation, and so on. So the point is that when they fail to provide the additional facts to make their conclusory allegation plausible, and when it is so contradicted by the expert agency's own report that finds completeness to the contrary, it's simply not plausible. Thank you, Mr. Hogan. Your colleagues have some time. So we'll hear from counsel for Niagara Falls Water Board. Thank you, Your Honor. May it please the court. My name is Jeff Boss. I represent the Niagara Falls Water Board. My client has a procedural argument that is not applicable to any of the other defendants. I'd like to use my time to discuss that. Section 50E of the general municipal law imposes a condition proceeding to commencing lawsuits against municipal defendants like the Water Board in that the plaintiff has to file a notice of claim within 90 days of the accrual of the claim. That did not happen here. Plaintiff's counsel concedes that they did not serve a notice of claim on the Water Board. They raised two arguments to try to get around this defect. First, they say that the Water Board had actual knowledge of the plaintiff's claims. That does not excuse the failure to serve a notice of claim. Under section 50E, it is one factor that the court can consider if the plaintiff makes an application to file a late notice of claim. However, that didn't occur here. In response to our motion to dismiss, they never filed an application to serve a late notice of claim. The other argument that they raise is that the Water Board is united in interest with the city of Niagara Falls. That argument also fails. It's very clear under New York law that in order for two defendants to be united in interest, they have to be vicariously liable for the actions of each other. And that is clearly not the case here. The Water Board and the city are separate entities. One of the allegations that the plaintiffs made is that the city of Niagara Falls created the Niagara Falls Water Board in 2002. That is not true. The Water Board was created by an act of the New York State legislature in 2002. I see my time is up. Unless they- No, thank you very much. Thank you. We appreciate your argument. We'll hear from counsel for GHD Services, Inc. Good morning, your honors. May it please the court. I'm Jeff Stravino of Hodson Russ, and I'm here today on behalf of defendant of Pelley GHD Services, Inc. We join the other defendants and urge this court to deny plaintiff's appeal and affirm the district court's opinion and order, which dismissed the claims in the first amended complaint against GHD and the other defendants. Specifically, with respect to GHD, plaintiffs failed to allege any facts that plausibly suggest how GHD was negligent or responsible for plaintiff's alleged injuries. We remind the court that plaintiffs had multiple opportunities to allege and assert claims against the defendants. Notably, the allegations in the first amended complaint against GHD are almost identical to those in the initial complaint. They even contain the same typographical error in paragraph 97. And the first amended complaint's 129 pages, but GHD's name is mentioned only eight times. Plaintiffs are trying to lump GHD in without any facts. And actually an example of that, your honors, was misfactor statement earlier in oral argument that plaintiffs seek relief for chemicals dumped by defendants, plural. But there's no allegation in this record that GHD ever dumped chemicals. I don't know. GHD is a company of engineers and environmental consultants. GHD didn't own the site, operate the site, or have anything to do with the alleged chemicals dumped. Misfactor statement today at oral argument reflects plaintiff's continued lumping in GHD and making only conclusory allegations. Finally, plaintiff's appellant's reply brief at page 24 cites to in-ray elevator antitrust litigation that a party cannot hide behind conclusory allegations. But in that case, this very court in 2007 affirmed the district court's dismissal of plaintiff's complaint for failure to allege plausible grounds. The court specifically held that plaintiff's conclusory allegations do not nudge their claims across the line from conceivable to plausible. I see my time is up and we, you know, the same is true here, your honors. Plaintiff's generic and conclusory allegations of negligence against GHD without any factual details fail to meet the plausibility standard. Thank you. Thank you very much. We'll hear from counsel for Roy Plumbing. Turn on your sound. Roy's Plumbing. I apologize. May it please the court. My name is Alice Cunningham and I represent defendant appellee Roy's Plumbing. Roy's involvement in the long history of Love Canal is very limited. It's limited to the sewer work performed under subcontract for OPTEC in 2011. Roy's is really an afterthought in this case. Roy's did not create, transport or dispose of environmental contaminants at any time. As Mr. Sterbino pointed out, the plaintiff's previously had the opportunity to plead its claims against the defendants in its original complaint. In dismissing the original complaint, the Western District found that the complaint lacks specificity as to how, where and when plaintiffs were purportedly exposed and how, where and when such chemicals entered their property. And it did not set forth facts linking plaintiff's exposure to the injuries or property damage suffered. In the first amendment complaint, the plaintiffs had the opportunity to correct the deficiencies in the original complaint, just like in the original complaint. Counsel, don't the plaintiffs allege that Roy's negligently power washed the toxins onto the property of the plaintiffs? Isn't that their allegation? It does allege that, Your Honor, but it also doesn't sufficiently say when the plaintiffs were allegedly exposed. It doesn't say what specifically Roy's did that contributed to that. It doesn't say that Roy's negligently cleaned up this toxic area they found in the sewer, that they then spread the toxins in the cleanup onto the plaintiff's property. Isn't that what they allege? They do allege that, but I don't think that gets you past Iqbal Twombly. That doesn't bring it beyond speculation. Here, they have to meet the heightened- What would they have to show? What would they have to show to your mind to prove that Roy's negligently cleaned up these toxins? What would they have to show? I think they would have to show when specifically they were exposed. They would have to, as the plaintiffs admit, this is on the appendix, page 2424, they said that we cannot pinpoint, even with all the discovery in the world, the exact date on which a certain chemical migrated either through the air or groundwater or dust to our client's property. They can't pinpoint anything that shows how those chemicals got onto the properties, and they haven't sufficiently connected it to the sewer work that Roy's performed. They claim that they power washed the chemicals onto their property. They used a power stream. Isn't that what they claim? And that sounds pretty specific to me. I think it goes back to what Mr. Hogan was saying. You know, in the EPA report, they ruled that there wasn't a leak, that the 2011 incident was isolated. It wasn't connected to Love Canal. So I think- But Roy was hired to clean up that 2011 leak, wasn't it? Isn't that why they were in this lawsuit? Yes, Roy's was brought in after the fact to- Right, after the fact. No one claims that they dumped the toxins, but they were hired to clean it up. And the plaintiffs claim that they did that negligently. I appreciate that, Your Honor. I don't think that gets you beyond the Iqbal Twombly standard. There's no allegations that the actions taken by Roy's caused the further migration. And it doesn't show you any indication of the location of the plaintiff's properties in relation to the sewer work that Roy's did. Thank you, Ms. Khan. Thank you. All right, Plaintiff's Counsel is reserving time. Thank you, Your Honor. So I'd like to address a few things. First, the Atlantic Ridgefield case from last year, I think is actually extremely important to show the correctness of our argument that plaintiffs are entitled to their tort claims. This is exactly what the Supreme Court in Atlantic Ridgefield told the plaintiffs there. Okay, you want to do something else? You want to have another remedy? For that, you have to go to the EPA. That's preempted. Because there's a remedy, it was approved, and you're trying to change it. Go to the EPA. However, it specifically said expressly that for all the tort claims, for all the state tort claims, so the nuisance and the damage to the property, all of those claims are preserved. And in fact, subsequently, when this case went back to the Supreme Court in Montana, it restated this, and it remanded the claims to the District Court. As far as what our relief is that we're asking for, it's very specific. It's stated in several pages of the complaint. We're asking for three things. One is damages for personal injury for people who got sick. Paid by whom? Paid by whom? Paid by the defendants, especially Occidental, but whoever is responsible for those chemicals being on our client's properties. And we think that's both the, that includes the municipal defendants who allowed these chemicals to remain in the sewers and who allowed the inactive areas of the sewers to remain open, who created bypass pumps to direct toxic material to the creek, which also caused additional contamination. And of course, Occidental and its contractors and subcontractors. The second item of relief is a medical monitoring fund, just like the one that was established for the original residents to catch any additional illnesses that are linked to toxic exposure.  Now, my opponent mentioned the outbreak of the double Bradley case in answer to the court's questions, it actually is on point. Although it did come before the court in a different procedural posture, it specifically talked about issues of preemption and it specifically discussed how all of these, the same types of tort claims must be preserved and are not preempted. Now, your honor also asked about the reports, the government reports, should we take them at their word? Well, on a motion to dismiss, public documents are admissible, but not for the truth of the matter stated. So, and those reports are not being litigated. So I would submit that they should not be taken as gospel truth or nor any statement in them. Now, I know I have very little time, so I just wanna quickly address the Niagara Falls Water Board. It does make a procedural argument, but the court below completely ignored the arguments that we made regarding it being united in interest with the city, which we believe it is. That's a question of fact. Also actual notice is a question of fact. Also whether notice of claim is actually required is a legal question, which we have shown, we have brought many cases to show that it's not always required against this type of defendant. GHD is Occidental's contractor and consultant. It was involved both in the remedy and the cleanup, as well as in the sewer cleanup in 2011. And so we have many specific allegations against it, as well as 12 pages of specific allegations against each and every defendant. So it is wrong to say that these are conclusory. The complaint is 58 pages long and extremely detailed. Against Roy's, in addition to what your honor pointed out, that we alleged that they did improper jetting, which spread the contamination. We also alleged specifically that their workers saw the non-aqueous liquid phase materials, the toxic materials. And yet they told people in the area that there's absolutely nothing to worry about. They're safe. So they misinformed people. And I guess all the defendants, we alleged that they also misinformed people and did not warn them of the risks of these chemicals that are actually on their property. Thank you very much, Ms. Thacker. I think your time has expired. And we appreciate the arguments of each of you. And we will reserve decision and turn to the second case on our.